Joshua Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Kevin Lemieux, Esq (SBN: 225886)
kevin@westcoastlitigation.com
**HYDE AND SWIGART**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Other Attorneys of Record Listed on Signature Page]

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rebecca Stacy and Margaret McKenna Individually and on behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Renewable Energy Center, LLC d.b.a. American Pro Energy,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.**<br><br>**Jury Trial Demanded** |

### INTRODUCTION

1. Rebecca Stacy (referred to individually as "Ms. Stacy") and Margaret McKenna (referred to individually as "Ms. McKenna" collectively referred to as "Plaintiffs"), bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions

1  of RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, (referred to as "Defendant"), in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"), thereby invading Plaintiffs' privacy.  Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs.  "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

4.  Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. At §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5.  As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

    > The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

    *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## JURISDICTION AND VENUE

6.  Jurisdiction is proper under 47 U.S.C §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740 (2012), because Plaintiffs allege violations of federal law.

7.  Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Plaintiffs live in San Diego County, CA, and the events giving rise to Plaintiffs' causes of action against Defendant occurred in the State of California within the Southern District of California and Defendant conducts business in the area of San Diego, California.

## PARTIES

8.  Plaintiffs are, and at all times mentioned herein were, individual citizens and residents of the County of San Diego, in the State of California.

9. Plaintiffs are informed and believe, and thereon allege, that Defendant Renewable Energy Center, LLC is, and at all times mentioned herein were, a Limited Liability Company (LLC) headquartered in Van Nuys, CA, doing business throughout CA, and at all times mentioned herein were, a "person," as defined by 47 U.S.C. § 153 (39).

10. Plaintiffs are informed and believe, and thereon allege, that "American Pro Energy" is a Los Angeles County registered d.b.a. of Renewable Energy Center, LLC.

11. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, Defendant conducted business in the State of California and in the County of San Diego, and within this judicial district.

## FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiffs were citizens of the State of California. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C § 153 (39).

13. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §153 (39).

14. Sometime prior to January 1, 2013, Ms. Stacy was assigned, and became the owner of, a cellular telephone number ending in 6635 from her wireless provider.

15. Beginning on or about March 30, 2017, Ms. Stacy received numerous telephone calls on their cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

16. The calls to Ms. Stacy's cellular telephone number (ending in 6635) from Defendant came from phone number, including but not limited to: (916) 241-6500.

17. Ms. Stacy received a call on March 30, 2017 at 3:02 PM. The call utilized a prerecorded or artificial voice recording. The pre-recorded voice informed Plaintiff that she could save hundreds on her energy bill. It then asked if this is Miss Stacy, but the computer mispronounced her name. Plaintiff responded, "yes." The voice then identified itself as calling from American Pro Energy. Ms. Stacy was then transferred to a live person who identified himself as "Ted."

18. Ms. Stacy asked "Ted" how he got her number. Ted replied that they use a "computer with an auto-dialer" to get their numbers and call potential customers. Ms. Stacy then asked Ted to be removed from their call list and to not call their anymore. Ted apologized, "Sorry Sweetie."

19. Ms. Stacy received another call that same day, on March 30, 2017 at 5:30 PM from (916) 241-6500.

20. Ms. Stacy received another call on April 3, 2017 at 3:52 PM from (916) 241-6500.

21. Ms. Stacy received another call on April 3, 2017 at 3:56 PM from (916) 241-6500.

22. Ms. Stacy received another call on April 4, 2017 at 9:42 AM from (916) 241-6500.

23. Ms. Stacy received another call on April 4, 2017 at 9:43 AM from (916) 241-6500.

24. Ms. Stacy received another call on April 5, 2017 at 4:25 PM from (916) 241-6500.

25. Plaintiff Stacy revoked any consent, if it was ever given, or Defendant mistakenly believed it was given, when she requested to be taken off the call list on March 30, 2017.

26. Sometime prior to January 1, 2013, Ms. McKenna was assigned, and became the owner of, a cellular telephone number ending in 5269 from her wireless provider.

27. Beginning on or about November 3, 2016, Ms. McKenna received numerous telephone calls on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), or an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

28. The calls to Ms. McKenna's cellular telephone number (ending in 5269) from Defendant came from phone numbers, including but not limited to: (619) 363-4713 and (619) 375-3632.

29. Ms. McKenna received a call on November 3, 2016 from Defendant. Ms. McKenna answered the call and there was a long delay and beep, then Defendant came on the line and identified itself as "American Pro Energy," and attempted to sell Ms. McKenna a home solar system.

30. Ms. McKenna requested that they place her on the do not call list and asked that she not be called again.

31. On December 8, 2016, Ms. McKenna received another call from Defendant on her cellular phone. There was the same long pause and a beep before Defendant came on the line. Ms. McKenna informed Defendant that she already asked to be removed from the call list. Defendant's employee responded, "I understand that ma'am, but the reason we are STILL calling you is…". Ms. McKenna terminated the call.

32. Ms. McKenna received another call from Defendant on January 25, 2017 to her cellular phone.

33. Plaintiff McKenna revoked any consent, if it was ever given, or Defendant mistakenly believed it was given, when she requested to be taken off the call list on November 3, 2016.

34. The ATDS used by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

35. The ATDS used by Defendant also has the capacity to, and does, call telephone numbers from a list of databases of telephone numbers automatically and without human intervention.

36. The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

37. Plaintiffs at no time provided "prior express consent" for Defendant to place telephone calls to Plaintiffs' cellular telephone with an artificial or prerecorded voice utilizing an ATDS as proscribed under 47 U.S.C. § 227(b)(1)(A).

38. Plaintiffs had not provided their cellular telephone numbers to Defendant. Plaintiffs were not customers of Defendant. Plaintiffs had no "established business relationship" with defendant, as defined by 47 U.S.C. § 227 (a)(2).

39. These telephone calls made by Defendant or their agents were in violation of 47 U.S.C. § 227(b)(1).

## STANDING

40. Standing is proper under Article III of the Constitution of the United States of America because Plaintiffs' claims state:
    a. a valid injury in fact;
    b. which is traceable to the conduct of Defendant(s);
    c. and is likely to be redressed by a favorable judicial decision.

    See, *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016) at 6*, and *Lujan v. Defenders of Wildlife, 504 U.S. 555 at 560*.

41. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

### A. *The "Injury in Fact" Prong*

42. Plaintiffs' injuries in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (Id.)*.

43. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Plaintiffs were called on their cellular phones numerous times by Defendant. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are concrete and *de facto*.

44. For an injury to be "particularized" means that the injury must "affect the Plaintiffs in a personal and individual way." *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016) at 7*. In the instant case, it was Plaintiffs' phones that were called and it was Plaintiffs themselves who answered the calls. It was Plaintiffs' personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS. Finally, Plaintiffs alone are responsible to pay the bill on their cellular phones. All of these injuries are particularized and specific to plaintiff, and will be the same injuries suffered by each member of the putative class.

### B. *The "Traceable to the Conduct of Defendant" Prong*

45. The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that their injury is traceable to the conduct of Defendant(s).

46. In the instant case, this prong is met simply by the fact that the calls to Plaintiffs' cellular phones were placed either, by Defendant directly, or by Defendant's agent at the direction of Defendant.

### C. *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

47. The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

48. In the present case, Plaintiffs' Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs and the members of the putative class.

49. Furthermore, Plaintiffs' Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

50. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016),* Plaintiffs has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated ("the Class" and "Revocation Subclass").

52. Plaintiffs represent, and are members of, the Class, consisting of:
    a. All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least one call

using an ATDS and/or an artificial prerecorded voice from RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, or their agents calling on behalf of RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, between the date of filing this action and the four years preceding, where such calls were placed for marketing purposes, to non-customers of RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, at the time of the calls.

53. Plaintiffs represent, and are members of, the Revocation Subclass, consisting of:

   b. All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least one call using an ATDS and/or an artificial prerecorded voice from RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, or their agents calling on behalf of RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, after the persons revoked consent, between the date of filing this action and the four years preceding, where such calls were placed for marketing purposes, to non-customers of RENEWABLE ENERGY CENTER, LLC, b.d.a. AMERICAN PRO ENERGY, at the time of the calls. ("Revocation Subclass")

54. Defendant and their employees or agents are excluded from the Class and Revocation Subclass. Plaintiffs do not know the number of members in the Class and Revocation Subclass, but believe the Class and Revocation Subclass members number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

55. Plaintiffs and members of the Class and Revocation Subclass were harmed by the acts of Defendant in at least the following ways: Defendant illegally

contacted Plaintiffs and the Class and Revocation Subclass members via their cellular telephones thereby causing Plaintiffs and the Class and Revocation Subclass members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class and Revocation Subclass members previously paid, by having to retrieve or administer messages left by Defendant or their agents, during those illegal calls, and invading the privacy of said Plaintiffs and the Class and Revocation Subclass members.  Plaintiffs and the Class and Revocation Subclass members were damaged thereby.

56. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and Revocation Subclass and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class and Revocation Subclass definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

57. The joinder of the Class and Revocation Subclass members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class and Revocation Subclass can be identified through Defendant's records and/or Defendant's agent's records.

58. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class and Revocation Subclass predominate over questions which may affect individual Class and Revocation Subclass members, including the following:

>    i. Whether, within the four years prior to the filing of the Complaint, Defendant made any call(s) (other than a call made for emergency purposes or made with the prior express consent

of the called party) to the Class and Revocation Subclass members using any ATDS or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

ii. Whether Defendant called non-customers of Defendant for marketing purposes;

iii. Whether Plaintiffs and the Class and Revocation Subclass members were damaged thereby, and the extent of damages for such violation(s); and

iv. Whether Defendant should be enjoined from engaging in such conduct in the future.

59. As a person who received numerous calls from Defendant in which Defendant used an ATDS or an artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class and Revocation Subclass. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Revocation Subclass in that Plaintiffs has no interests antagonistic to any member of the Class or Revocation Subclass.

60. Plaintiffs and the members of the Class and Revocation Subclass have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class and Revocation Subclass will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  The size of Class and Revocation Subclass member's individual claims causes, few, if any, Class and Revocation Subclass members to be able to afford to seek legal redress for the wrongs complained of herein.

61. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

62. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class and Revocation Subclass members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those that would be presented in numerous individual claims.

63. Defendant has acted on grounds generally applicable to the Class and Revocation Subclass, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole and Revocation Subclass.

## FIRST CAUSE OF ACTION:
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

64. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

66. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class and Revocation Subclass are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiffs and the Class and Revocation Subclass are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION:
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

68. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

70. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and each of the Class and Revocation Subclass are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

71. Plaintiffs and the Class and Revocation Subclass are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

72. Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and the Class and Revocation Subclass members the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

73. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class and Revocation Subclass member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

75. Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION
OF THE TCPA, 47 U.S.C. § 227 ET SEQ.**

76. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class and Revocation Subclass member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

77. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

78. Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

79. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Respectfully submitted,

Date:  April 28, 2017                              **HYDE & SWIGART**

                                                    By:  s/Kevin Lemieux
                                                    Kevin Lemieux
                                                    Attorneys for Plaintiff

**Other Attorneys of Record, besides caption page:**

Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (800) 400-6808
Facsimile:    (800) 520-5523